United States District Court

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

DEMETRA GARVIN
MARGARET NICOLE EDWARDS
AND TAKEYRA MCCLAIN

                                              Civil Action _____

    Plaintiffs,

vs.                                  **JURY DEMANDED**

EFFINGHAM COUNTY SCHOOL
DISTRICT, and YANCY FORD, in his
Individual and Official Capacity;

    Defendants.

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Come now, Plaintiffs Demetra Garvin (Garvin), Margaret Nicole Edwards (Edwards) and Takeyra McClain(McClain) present their Complaint for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"), Substantive Due Process Clause and Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

## PRELIMINARY STATEMENT

A. Plaintiff Garvin is an experienced, long term employee, contractor in

fourteen years. She applied repeatedly for teaching positions while holding a bachelors, and masters degree. She has repeatedly been denied a permanent position and subject to discrimination in hiring practices by the Effingham County School District. This suit was born of the most recent rejection of Garvin in favor of a less qualified, less experienced white female teacher.

B. Plaintiff Edwards is an experienced, highly qualified educator with over twenty years of experience. She holds bachelors, masters, and specialist degrees. She also holds the coveted leadership endorsement, which is highly sought after, yet few hold, in this district. She has applied repeatedly for administrative positions and has been subjected to discrimination in hiring practices by the Effingham County School District. She has repeatedly been denied an administrative position in favor of less qualified white candidates and a black male.

C. Plaintiff McClain is an experienced educator who has served as a teacher and a cheerleading coach for the Effingham County School District. She holds a bachelors and masters degree in addition to being certified at the time of her application. She was passed over in favor of a less qualified white candidate.

## INTRODUCTION:

It is not hard to figure out that you are being discriminated against

when you look at the demographics it reflects that less than 1% of teachers administrators in the district are minority, despite countless qualified minorites are passed over for positions. ECSD is comprised of about 16% African-American students, yet less than 1% of its teachers and administrators are African American. Despite countless qualified minority applicants applying for positions, the demographics have remained the same. This is and has been the case for Garvin, Edwards and McClain with the Effingham County School District.

Plaintiffs have been subjected to a systemic pattern and practice of race discrimination involving practices which have also had an unlawful, disparate impact on them and their employment opportunities.

## I. NATURE OF THIS ACTION

1. Plaintiffs, Garvin, Edwards and McClain, who worked for Defendant Effingham County School District("Defendant") bring this action to redress race and sex discrimination

2. The Plaintiffs bring this action for being subjected to unlawful discrimination by Defendants.

3. Plaintiffs have been subjected to one or more aspects of the systemic race discrimination described in this Complaint, including, but not limited to: discriminatory policies, practices and procedures in

selection, promotion, and advancement. The systemic discrimination described in this Complaint has been, and is, continuing in nature.

4. This action is brought under 42 U.S.C. §1981, Substantive Due Process Clause and Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and also contains any other cause of action that can be reasonably be proven from the facts set forth herein, to redress violations of Plaintiffs' rights as guaranteed by the laws of the United States prohibiting unlawful discrimination in employment.

5. The Plaintiffs are seeking, on behalf of themselves, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress Defendants' pervasive and discriminatory employment policies, practices and procedures.

## II. JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a discrimination suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and supplemental jurisdiction over Plaintiffs' state claims pursuant to U.S.C. §1367.

7. Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c) because Defendants are subject to personal

jurisdiction, and reside in Georgia.

8. The Southern District of Georgia is the most logical forum in which to litigate the claims of the Class Representatives and the proposed class in this case. Plaintiffs worked for Defendant in Effingham County Georgia which is within the district and divisional boundaries of the Savannah Division of the Southern District of Georgia. Furthermore, the Class Representatives and many of the potential class members reside in all areas of the Southern District of Georgia.

## III. PARTIES

## A. Plaintiffs

9. Plaintiff Demetra Garvin is a citizen of the United States and a resident of Georgia.

9. Plaintiff Margaret Nicole Edwards is a citizen of the United States and a resident of Georgia.

10. Plaintiff Takeyra McClain is a citizen of the United States and a resident of Georgia.

11. Plaintiffs Garvin, Edwards, and McClain all filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC).

12. Plaintiffs Garvin, Edwards, and Mcclain have all been granted a right to sue letter from the EEOC.

## B. Defendants

13. Defendant Effingham County School District (ECSD), at all relevant times, was and still is a public school district located in Effingham County, Georgia charged with the duty to "establish and maintain public schools: within its geographical limits under the Georgia Constitution, Ga. Const. Art. VIII, §5, ¶I.

14. ECSD is governed by the Board, which is charged with the "management and control" of the the ECSD school system. Ga. Const. Art. VIII, §5, ¶II.

15. ECSD is a recipient of federal funds.

16. ECSD is a state actor and is subject to the Fourteenth Amendments of the U.S. Constitution.

17. Defendant Yancy Ford (Ford) is the Superintendent of ECSD, a position to which he was appointed by the Board. He is being sued in his individual and official capacity.

18. As set forth below, the individually named Defendants directly participated in the discriminatory conduct against Plaintiffs.

## IV. BACKGROUND FACTS

A. **History of Racial Discrimination within Effingham Countu Schools**

19. ECSD resisted integrating its schools until 1970, sixteen years after the U.S. Supreme Court's *Brown vs. Board of Education* decision. Since the District's reluctant desegregation, ECSD has continued to promote a practice of not hiring minority applicants. At all times relevant since Brown, ECSD has consistently maintained less than 1% educators and administrators.

20. ECSD actively resisted desegregating its schools for sixteen years and, in the years since, has generated and sustained an environment that is not accepting for minority teachers and administrators.

21. ECSD has demonstrated and continues to demonstrate the inability of ECSD to exercise and demonstrate fairness and equality to individuals without regard to race.

### B. ECSD's Deliberate Creation of Environment and Practice/Policy Fostering Pervasive Racial Discrimination in Employment and Hiring Practices at Effingham County Schools

22. ECSD has consistently maintained a demographic of less than 1% minority teachers and administrators. Despite many qualified minorities applying for countless positions, ECSD has displayed a pattern and established a practice of hiring less qualified, and in some instances, unqualified white applicants. Defendants have engaged in

unlawful systemic discrimination in its hiring, promotion, advancement, transfer, training, and discipline policies, practices or procedures. Further Defendants have, through its policies, practices or procedures, (a) denied or delayed the hiring and promotion of African American candidates.

## I. PLAINTIFF GARVIN

23. Plaintiff Garvin has been a well regarded educator and passionate employee with ECSD since 2014. She initially began as a paraprofessional. She ultimately earned her master's degree while still employed in a paraprofessional capacity. She repeatedly applied for teaching positions and was constantly rejected. She had been advised on numerous occasions by Ford that "her time was coming." Throughout her years, she has always received positive evaluations.

24. It should be noted that Garvin has served as an interim and long term substitute in ESCD.

25. In 2022, while a substitute, Garvin was approached by the principal, Mr. Murray, who personally came to her classroom and asked her to step outside. In that conversation, Mr. Murray commended her on the excellent job she was doing and proceeded to advise her that ECSD had given him the opportunity to add another permanent teacher to his staff.

26. Mr. Murray advised her to follow through the process, fill out the

27. Garvin completed the application and was interviewed on October 8, 2022. During that time, the staff had began to show Garvin which classroom she would be in and she began purchasing supplies to personalize and set up her classroom.

28. On October 9, 2022 Kirbi Ratner, Human Resources Director, confirmed an interview for the candidate that would ultimately be hired, MacKenzie Cook. Cook interviewed and on October 18, 2022, at approximately 9:15 a.m., Mr. Murray sends an email to Cook advising her that he would **"like to offer you a teaching position at Marlow Elementary, beginning this January."**

29. However, shortly thereafter, at 9:38 a.m. Murray follows up with Cook via email, and asks, "**Hey, did you apply for the position? I was looking in the Winocular system and didn't see your application there. If not, can you go ahead and do that.**"

30. Cook responds back to Murray's email at 1:49 p.m. saying, **"I just submitted my application."**

31. On her application Cook's response to the prompt inquiring of any teaching/supervisory/adminstrative work experience was **NO**.

32. Further, she answered "**0 (ZERO)** when asked about total years of teaching experience.

33. On November 28, 20222, Murray sends a message to his staff welcoming Cook to the team and but advises that it will be later, "**as she still must walk the stage in a few weeks.**

34. Cook's employment was approved by the ECSD on December 7, 2022, effective January 3, 2023.

35. It should be duly noted that at the time that Cook was offered the position that she had not graduated from an accredited or any institution.

36. Further, though she was hired on December 7, 2023, she did not graduate until December 13, 2022.

37. Additionally, ECSD did not receive any transcripts of Cook until AFTER she had been hired on December 16, 2022.

38. Subsequently upon Garvin inquiring about the hire on February 5, 2023, ECSD submitted Cook's paperwork to the Georgia Department of Education for hiring. She was not issued her clearance certificate until February 7, 2023; 2 months after her hire was approved by ECSD.

39. Garvin began as a paraprofessional in 2014. She ultimately earned her master's degree while still employed in a paraprofessional capacity. She repeatedly applied for teaching positions and was constantly rejected. She had been advised on numerous occasions by Ford that "her time was coming." Throughout her years, she has always received positive evaluations.

## II.    <u>PLAINTIFF EDWARDS</u>

39. Plaintiff Edwards has been a well regarded educator and passionate employee with ECSD for over 20 years. She is a life long career educator. During her tenure with ECSD, she has been named Teacher of the Year, and also deemed a Master Teacher by the State of Georgia for the proficiency of students standardized mathematics scores. Further, she has a 6th year degree and holds her leadership certification since 2017.

40. Edwards applied for three (3) Assistant Principal Positions and five (5) Instructional Coach positions from January 2023-March 2023.

41. She applied for Job Posting Numbers 003525, 03529, 003479, 003497, 003498, 003549, and 003530.

42. In all those positions Edwards was rejected in favor of less qualified white candidates, she was the ONLY candidate that possessed the leadership certification.

43. In fact, one of the white candidates, Katie Whitten, that was selected for a position over Edwards 1.5 years ago, just received her leadership certification in June 2023 despite Edwards having it at the time of application.

44. Edwards teaching credentials, accolades and leadership certification clearly separate her from the white candidates selected instead of her.

### III.   PLAINTIFF MCCLAIN

45. Plaintiff McClain is a dedicated educator who has taught in ECSD and other districts for years.

46. On March 30, 2023 McClain applied with ECSD for the position of Physical Education Teacher at Blandford Elementary School.

47. The position opened on February 2, 2023 and closed on April 26, 2023.

48. It should be noted that McClain had served as cheerleading coach for South Effingham High School within ECSD.

49. ECSD conducted interviews, but McClain did not receive an interview.

50. On March 3, 2023, the candidate ultimately selected for the position, Kierra Nesmith, posted on social media announcing her newfound position at Blandford Elementary School, over 1.5 months before the position closed.

51. Between March 3, 2023, the date of Nesmith's post announcing her hire and April 26, 2023 the actual closing date of the job posting, ESCD accepted applications from 28 candidates, including McClain.

52. Nesmith had NO educational experience as a teacher at the time of her application and at the time of her hire only had paraprofessional certification.

53. Further, Nesmith was afforded the opportunity to obtain a one (1) year provisional which expires in 2024 as she was not certified to teach at the time of her hire.

54. McClain, on the other hand, has taught in this district for years. She

holds a bachelor's degree in Child Documentation and Literature and a master's degree in reading.

55. McClain was blatantly rejected in favor of a white candidates who was not just less qualified, but more likely, unqualified.

IV. **DISCRIMINATORY HIRING PRACTICES AS TO ALL PLAINTIFFS**

56. Discrimination in hiring, promotion and advancement occurs as a pattern and practice throughout all levels of Defendants. Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision-making, preselection and interaction between non-African American managers, supervisors, and subordinates based on race rather than by merit or equality of opportunity.

57. Defendants' policies, practices and procedures have had an adverse impact on African Americans seeking selection for, or advancement to, better and higher paying positions.

58. Differential treatment between employees based on race occurs as a pattern and practice throughout all level of Defendants. Defendants repeatedly reject more qualified African American candidates in favor of their less qualified white counterparts.

59. Plaintiffs have been affected by Defendants' failure to implement adequate policies to detect, monitor, and correct this pattern and practice of discrimination.

60. Defendants have failed to create adequate incentives for its hiring personnel to comply with equal employment opportunity laws regarding each of the employment policies, practices and procedures referenced in this Complaint and have failed to discipline adequately its hiring personnel and other employees when they violate the anti-discrimination and anti-retaliation laws. These failures have affected Plaintiffs in the same way.

61. The relief necessary sought to remedy the claims of Plaintiffs is (a) a declaratory judgment that Defendants have engaged in systemic racial discrimination against Plaintiffs and future African-American candidates and employees; (b) a permanent injunction against such continuing discriminatory or retaliatory conduct; (c) injunctive relief which effects a restructuring of Defendants' hiring, promotion, transfer, training, performance evaluation, compensation, policies, practices and procedures so that Plaintiff and future African-Americans will be able to compete fairly in the future for hires, promotions, transfers, and assignments to better and higher paying classifications with terms and conditions of employment traditionally enjoyed by other non-African American employees;; (d) back pay, front pay, and other equitable remedies necessary to make Plaintiffs whole from the Defendants' past discrimination; (e) compensatory damages; (g) punitive and nominal damages to prevent and deter Defendants from engaging in similar discriminatory or retaliatory practices in the future; and (h) attorneys' fees, costs and expenses.

62. Defendants' hiring, promotion and advancement incorporate the following discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of racial stereotypes and bias by Defendants' predominately on-African-American candidates in making hiring promotion and advancement; (b) refusing or failing to provide equal hiring and advancement opportunities to African-Americans; (c) refusing or failing to provide African-Americans with opportunities to demonstrate their qualifications for advancement; (d) refusing or failing to establish and follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact or intentional racial bias; (e) using informal, subjective selection methods which allow for rampant racial discrimination disciplining them; (g) discouraging applications and expressions of interest by African-Americans;

63. Defendants' promotion policies, practices and procedures have had a disparate impact on the Plaintiff Edwards. The policies, practices, and procedures are not valid, job-related, or justified by business necessity. There are alternative objective and more valid selection procedures available to the Defendants that are more closely related to the actual responsibilities of the positions, and which would have less of a disparate impact on African Americans. However, the Defendants have failed to use or have refused to use such alternative procedures.

64. Defendants' promotion practices and procedures are intended to

have a disparate impact on the Plaintiff Edwards. This practice is a part of the Defendants' overall pattern and practice of keeping African Americans in the lower classifications which have fewer desirable terms and conditions of employment.

65. Because of Defendants' systemic pattern and practice of racial discrimination, Plaintiffs have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits. This pattern and practice of race discrimination includes: being denied hiring opportunities or promotions in favor of equally or less qualified non-African-American employees.

66. The Plaintiffs have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. The Plaintiffs are now suffering irreparable injury from Defendants' unlawful policies, practices and procedures as set forth herein, and will continue to suffer unless those policies, practices and procedures are enjoined by this Court.

67. Plaintiffs allege that Defendants have discriminated against the Plaintiffs by treating them differently from and less preferably than similarly situated non-African-American candidates and employees and subjecting them to discriminatory denials of hires, promotions, disparate terms and conditions of employment, and other forms of discrimination in violation of Section 1981, Substantive Due Process Clause and Equal

Protection Clause of the United States Constitution pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

68. Defendants' conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiffs.

69. Defendants' policies and practices have produced a disparate impact against the Plaintiffs with respect to opportunities and terms and conditions of employment/advancement.

70. By reason of the continuous nature of Defendants' discriminatory conduct, persistent throughout the employment of the Plaintiffs, Plaintiffs are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

71. Because of the discrimination suffered at the hands of Defendants, Plaintiffs are entitled to all legal and equitable remedies available under Section 1981,Substantive Due Process Clause and Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

## JURY DEMAND

83. Plaintiffs request a trial by jury to the extent allowed by law.

WHEREFORE, the Plaintiffs, request the following relief:

A. Declaratory judgment that Defendants' employment policies, practices

and/or procedures changed. The conduct illegal and/or violation Section 1981;

B. A permanent injunction against Defendants and their employees and representatives and any further unlawful practices, policies, customs, usages, race discrimination by the Defendants as set forth herein;

C. An Order requiring Defendants to initiate and implement programs that (i) will provide equal employment opportunities for African-American employees; (ii) will remedy the effects of the Defendants' past and present unlawful hiring and employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory practices described.

D . An Order requiring the Defendants to initiate and implement systems of hiring, training, transferring, and promoting African American employees in a non-discriminatory manner;

E. An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Plaintiffs to be determined at trial;

F. Any other appropriate equitable relief to the Plaintiffs;

G. An award of compensatory, nominal and punitive damages to Plaintiffs;

H. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiffs;

I. Pre-judgment interest;

J. Such other and further relief as the Court may deem just and proper; and

K. Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law.

Respectfully submitted,

/s/L. Nicole Hamilton

L. Nicole Hamilton, Esq.
ATTORNEY FOR PLAINTIFFS
420 Seabreeze Dr.
Rincon, GA 31326
(912)596-4740

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served via electronic filing on November 27, 2023, to counsel of record.